UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FEDERAL NATIONAL MORTGAGE
ASSOCIATION, d/b/a FANNIE MAE,

Plaintiff,

v.

RIVER HOUZE, LLC,

Defendant.
_____/

Case No. 21-cv-10958

U.S. District Court Judge
Gershwin A. Drain

**OPINION AND ORDER GRANTING OVERSEER'S MOTION TO ENFORCE STAY, COMPEL NONPARTY BURBAR CONSTRUCTION LLC TO REMOVE ITS CONSTRUCTION LIEN, AND FOR ATTORNEYS' FEES AND COSTS (ECF No. 61)**

### I. INTRODUCTION

On April 27, 2021, Plaintiff Federal National Mortgage Association, a corporation established pursuant to 12 U.S.C. § 1716 *et seq.* ("Fannie Mae"), initiated this action alleging Defendant River Houze, LLC ("River Houze") has defaulted on a mortgage held by Fannie Mae on the multi-family commercial property located at 9000 East Jefferson Avenue, Detroit, Michigan 48214 (the "Property"). ECF No. 1.

1

Presently before the Court is the Overseer's Motion to Enforce Stay, Compel Nonparty Burbar Construction LLC to Remove its Lien, and for Attorneys' Fees and Costs (ECF No. 61).  Nonparty Burbar Construction LLC ("Burbar") filed a timely Response, ECF No. 78, as did Fannie Mae, ECF No. 80, and the Overseer filed a timely Reply, ECF No. 88.  Upon review of the parties' submissions, the Court concludes oral argument will not aid in the disposition of this matter.  Therefore, the Court will resolve the instant Motion on the briefs.  *See* E.D. Mich. LR § 7.1(f)(2).  For the following reasons, the Court will **GRANT** the Motion.

## II.     FACTUAL & PROCEDURAL BACKGROUND

Burbar filed a lawsuit against River Houze and its Chief Financial Officer on April 19, 2021 in Wayne County Circuit Court, alleging claims for breach of contract and to foreclose on a lien it filed on April 6, 2021 related to work performed on the Property. ECF No. 78, PageID.1387-94.  Shortly thereafter, Burbar and River Houze entered a settlement agreement by which River Houze agreed to pay $140,000 in thirteen installments.  ECF No. 61-2, PageID.1209.  The agreement provided that "[u]pon receipt of the first payment of $30,000, within one (1) business day[,] Burbar will execute and record with the Wayne Count Register of Deeds a Release and Discharge of Claim of Lien recorded on April 6, 2021." *Id.* at PageID.1210.  The settlement agreement further provided that if the agreement was breached, "Burbar

2

may replace the Claim of Lien against the real property for whatever balance is outstanding, without any objection or defense raised by Defendants . . . ." *Id.* River Houze made the first three payments mandated by the settlement agreement, ECF No. 78, PageID.1381, and Burbar filed a Release of Claim of Lien, *id.* at PageID.1471.

Then, on June 10, 2021, this Court entered the Stipulation and Order By and Between Federal National Mortgage Association and River Houze LLC to Appoint Ronald L. Glass to Oversee Property (ECF No. 35) (the "Overseer Order"). To preserve the value of the Property, the Overseer Order expressly stayed all parties from taking action against the Property without leave of this Court. *Id.* at PageID.895-96. Specifically, the Overseer Order provides, in relevant part:

> Except for the above-captioned case and by leave of this Court, and except with respect to any right of Fannie Mae to foreclose its Mortgage on the Property, during the pendency of the appointment, Borrower, any other defendants, and *all other persons, creditors and entities* including but not limited to tenants and others in privity of contract with Borrower, or the other defendants, (other than Fannie Mae) *are hereby stayed from taking any action that affects the Property in any manner*, including any action or lawsuit to establish or enforce any claim, right or interest either for, against, on behalf of, or in the name of Borrower, the other defendants (solely pertaining to the Property), Mr. Glass, Property, or Mr. Glass' duly authorized agent acting in their capacities as such, *including but not limited to, the following actions*:
>
> . . .

3

      b.    Accelerating the due date of any obligation or claimed obligation, *enforcing any lien upon*, or taking or attempting to take possession of, or retaining possession of, property of Borrower, or any other defendants that relates in any way to the Property, or attempting to foreclose, forfeit, alter or terminate any of Borrower or any other defendants' interest in the Property, whether such acts are part of a judicial proceeding or otherwise;

. . .

*Id.* at PageID.896 (emphasis added). The Overseer Order further provides "Mr. Glass shall not concede, settle, compromise or pay any Pre-Appointment Liabilities (as such term is defined below) without the written consent of Fannie Mae."[1] *Id.* at PageID.900.

In August 2021, counsel for Burbar wrote the counsel for the Overseer asking about the status of the August 1, 2021 payment. ECF No. 61-3, PageID.1213. He expressed his "understanding that a receiver ha[d] been appointed" and that his client

---

[1] Pre-Appointment Liabilities are defined as:

    any claim, obligation, liability, action, cause of action, cost or expense of Borrower, any other defendant, or the Property arising out of or relating to events or circumstances occurring prior to this Order, including without limitation, any contingent or unliquidated obligations and any liability from the performance of services rendered by third parties on behalf of Borrower or any other defendant, and any liability to which Borrower or any other defendant is currently or may ultimately be exposed under any applicable laws pertaining to the ownership, use or operation of the Property and operation of Borrower's business.

ECF No. 35, PageID.903-04.

4

"ha[d] been told he w[ould] not be paid." *Id*. He also stated that his client would "re-lien the property and file a foreclosure action" if the agreement was breached. *Id*. Burbar subsequently re-recorded its lien on October 13, 2021. ECF No. 61-4, PageID.1215.

The Overseer contacted Burbar in early January 2022 to resolve the issue. ECF No. 61-5, PageID.1220. The Overseer provided a copy of the Overseer Order and explained its position that the lien Burbar recorded in October 2021 violated Section 9 of the Order because "the Overseer does not have the authority under the [Overseer Order] to make those payments at this time." *Id*. Burbar's counsel responded that he believed Burbar's claim of lien complied with the Overseer Order but would confirm after further research. *Id.* at PageID.1219. However, he did not follow up. *See generally* ECF No. 61-5.

The Overseer filed the instant Motion to Enforce Stay, Compel Nonparty Burbar Construction LLC to Remove Its Construction Lien, and for Attorneys' Fees and Costs. ECF No. 61. The Overseer argues "[t]he Court has inherent authority to enforce its orders, and to assess attorneys' fees and costs against parties that are in violation of those orders." *Id.* at PageID.1203 (citing *Liberis v. Craig*, 845 F.2d 326, *5 (6th Cir. 1988)). Further, the Overseer contends, "Burbar's October 13, 2021 construction lien is a blatant violation of the Overseer Order, rendering Burbar in

5

contempt of that Order." *Id.* at PageID.1204. Moreover, the Overseer avers, "any amounts still owed to Burbar are Pre-Appointment Liabilities that the Overseer is not permitted to pay without the written consent of Fannie Mae—which has not been given." *Id*. Thus, the Overseer requests the Court "enforce its order and compel Burbar to release its lien" as well as "award the Overseer his attorneys' fees and costs incurred in bringing this Motion." *Id*.

Burbar asserts that it is indisputably entitled to a lien on the Property. ECF No. 78, PageID.1382. It argues that "[n]othing within the Overseer's motion acknowledges Michigan law on the rights of a contractor to a lien under the Michigan Lien Act." *Id.* at PageID.1383. Burbar contends it was faced with difficult choices:

> On the one hand, if Burbar failed to quickly reinstitute the lien (upon finding that River Houze had shamelessly executed a sham agreement), Burbar might later find that the lien was ineffective for failure to comply with the Michigan Lien Act. On the other hand, Burbar was confronted with the stipulated agreement between two parties, neither of whom had any interest in protecting Burbar's interest under the Construction Lien Act.

*Id*. Burbar therefore avers it is "grossly inequitable" for the Overseer to force Burbar to act inconsistently with Michigan's Construction Lien Act and potentially waive an interest that would otherwise be enforceable. *Id*.

6

Fannie Mae responded in support of the Overseer's Motion. ECF No. 80. Specifically, Fannie Mae "agrees" that Burbar's October 13, 2021 lien "violates" the Overseer Order. *Id.* at PageID.1475-76. Additionally, Fannie Mae argues "[t]he amounts allegedly owed to Burbar constitute Pre-Appointment Liabilities (as defined in Overseer Order)," which Fannie Mae had not consented to pay because the funds used to pay Burbar constitute cash collateral used to secure to repayment of the mortgage between Fannie Mae and River Houze. *Id.* at PageID.1477-78. Finally, Fannie Mae described Burbar's lien as "an impermissible cloud on title that impairs Plaintiff's rights and will potentially impact any sale of the Property."[2] *Id.* at PageID.1478.

### III.   LAW & ANALYSIS

As citied by Burbar, the Michigan Construction Lien Act, M.C.L.570.1101, *et seq.*, provides that

> "[e]ach contractor . . . who provides an improvement to real property has a construction lien upon the interest of the owner or lessee who contracted for the improvements to the real property, . . . the interest of an owner who has subordinated his or her interest to the mortgage for

---

[2] Fannie Mae initiated a non-judicial foreclosure on the Property on January 12, 2022, and the Sheriff's Sale was held on March 31, 2022. Notably, Fannie Mae was the only entity to bid on the Property, lending credence to its concern about the impact of Burbar's lien. ECF No. 96, PageID.1622

7

      the improvement of the real property, and the interest of an owner who has required the improvement."

MICH. COMP. LAWS § 570.1107(1). Additionally, "substantial compliance with the provisions of" the Construction Lien Act, "shall be sufficient for the validity of the construction liens provided for" in the Act. MICH. COMP. LAWS § 570.1302.

    Notably, the Overseer does not dispute that Burbar was entitled to a lien on the Property *prior* to the issuance of the Overseer Order. Instead, the Overseer asserts the recording a Claim of Lien against the Property in October 2021 violated the express terms of the stay provision of the Overseer Order. Further, the Overseer contends the amounts owed to Burbar under the settlement agreement constitute Pre-Appointment Liabilities, which it cannot pay without Fannie Mae's consent without, itself, violating the Overseer Order.

    The Court agrees. At the time the Court appointed the Overseer, Burbar did not hold a recorded lien against the Property. The Overseer Order explicitly stays "all other persons, creditors and entities . . . from taking any action that affects the Property in any manner, including . . . *enforcing any lien upon* . . . the Property." ECF No. 35, PageID.896 (emphasis added). Thus, recording a Claim of Lien in October 2021, months after the Court issued the Overseer Order, was a violation. This is particularly egregious given Burbar's decision to retain its Claim of Lien after the Overseer reached out regarding the stay.

8

To the extent Burbar avers otherwise by relying on its settlement agreement with River Houze, such an assertion is unavailing. Pre-Appointment Liabilities, as defined by the settlement agreement, expressly include "any liability from the performance of services rendered by third parties on behalf of Borrower or any other defendant" that occurred prior to the Overseer Order, which includes the installment payments to which River Houze agreed. ECF No. 35, PageID.904. Per the Overseer Order, such payments cannot be made without Fannie Mae's written consent, which it has declined to give.

Burbar makes an equitable argument about the fairness of requiring it to release its Claim of Lien and comply with the Overseer Order, and thus "potentially sacrifice [it's] interests." ECF No. 78, PageID.1383. This is equally unavailing. This Court has already issued orders granting motions for intervention and for leave to enforce construction liens by two other contractors. ECF Nos. 75, 83. Indeed, the Overseer and Fannie Mae stipulated to such for one of the contractors. ECF No. 75. There is nothing before the Court to suggest Burbar would not have been successful if it sought leave of Court to enforce its lien as it was supposed to. The Court will not reward Burbar for blatantly disregarding its orders and will thus grant the Overseer's Motion. *See Liberis*, 845 F.2d at *5 (6th Cir. 1988) (recognizing the "inherent power of a court to enforce its own orders" and courts "inherent authority

9

to enforce their judicial orders and decrees in cases of civil contempt by assessing attorneys' fees."); *see also Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258 (1975) ("[A] a court may assess attorneys' fees for the willful disobedience of a court order as part of the fine to be levied on the defendant.") (cleaned up).

### IV.   CONCLUSION

Accordingly, for the reasons articulate above, **IT IS HEREBY ORDERED** that the Overseer's Motion to Enforce Stay, Compel Nonparty Burbar Construction LLC to Remove its Lien, and for Attorneys' Fees and Costs (ECF No. 61) is **GRANTED**.

**IT IS FURTHER ORDERED** that Burbar Construction LLC is **ORDERED** to release its Claim of Lien within thirty (30) days of this Opinion and Order.

**IT IS FURTHER ORDERED** that the Overseer is **DIRECTED** to submit an itemization of all reasonable attorney fees incurred in bringing this Motion.  The itemization should include, at a minimum, the hourly rate of the attorney(s) involved, a brief description of the work performed, the number of hours attributed to each task, and any other relevant information the court will need to perform a lodestar analysis.  Burbar may submit any objections with ten (10) days of the Overseer's submission.

10

**IT IS SO ORDERED**.

/s/ Gershwin Drain  
GERSHWIN A. DRAIN  
UNITED STATES DISTRICT JUDGE

Dated: July 21, 2022

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on July 21, 2022, by electronic and/or ordinary mail.

/s/ Teresa McGovern  
Case Manager

11